Davis v. Hendricks.

---

DAVIS *et al., Plaintiffs in Error*, v. HENDRICKS.

1. **Contract to Make One his Heir: ADOPTION OF CHILD.** An alleged contract that a testator would adopt plaintiff as his child and would grant and devise to her all his property at his death is not supported by evidence that the testator agreed to adopt plaintiff as his child and make her his heir.

2. ——— : ———. The evidence only places the adopted child in the position of a natural one.

*Error to Marion Circuit Court.*—HON. THEODORE BRACE, Judge.

AFFIRMED.

*W. M. Boulware* for plaintiffs in error.

(1) The principles applicable to this case are not longer open to contention in this state. *Sharkey v. McDermott*, 91 Mo. 647; *Sutton v. Hayden*, 62 Mo. 101; *Gupton v. Gupton*, 47 Mo. 37. (2) It is understood that the objection to the enforceability of the contract in equity has been, that during the life of Mr. McCormick it wanted mutuality of remedy as against Dr. Campbell and plaintiff. To this objection the all-sufficient answer is, that it was fully performed on their part, and therefore the question as to whether its performance by them while *in fieri* could have been enforced is wholly irrelevant. On this point the cases above cited are decisive. The following authorities support the ruling of this court on this point: Adams Equity [4 Amer. Ed.] 237, *82; *Wellington v. Apthorpe*,

145 Mass. 69; *Seager v. Burnes*, 4 Minn. 141; *Grove v. Hodges*, 55 Pa. St. 504; *Storm v. U. S.*, 94 U. S. 83; *Miller v. McKenzie*, 95 N. Y. 575; *Ryer v. Stockwell*, 14 Cal. 134; *Read v. Long*, 4 Yerg. 68; *Crawford v. Avery*, 35 Miss. 205. (3) It is believed to be unnecessary to consider the question that may be made as to the validity of the legislative act of adoption. It would clearly be invalidated by our present constitution. But at the time of its passage the constitution of 1820 was in force. The general law providing for adoption by deed, passed in 1857, also was in operation. (4) It is believed that as to the certainty of the proof of the contract, the fulness of the performance, the strength of its equity and the pathos of its incidents, a case more persuasive than this will not be found in the reports.

*M. G. Reynolds* for defendants in error.

(1) The evidence fails to show the contract; there is no proof that there was an agreement that plaintiff was to inherit McCormick's property. (2) McCormick did everything for the plaintiff he could have done had she been his natural child and she could ask no more.

BLACK, J.—This was a suit in equity brought by Mary E. Davis and her husband for the specific performance of a contract alleged to have been made by her father for her benefit with John McCormick. The defendants are the widow, the administrator and the devisees of said John McCormick.

Dr. Campbell, the father of the female plaintiff, and John McCormick, with their families, resided in the town of Ashley, Pike county. Dr. Campbell's wife died on the twentieth of August, 1862, leaving a child named Anna, then about three months old; he had a family of thirteen children and was without property. Mr. McCormick was in good financial circumstances and

had no children.    He and his wife adopted Anna as their own child in the manner hereafter stated, and changed her name to that of Mary E. McCormick, which was the name of Mrs. McCormick.    The child continued to live with them until she married her co-plaintiff, which was after the death of Mr. McCormick.    He died in 1881, leaving a will executed in 1875, and by which he devised his homestead in Ashley to his wife for life, and at her death to his daughter Mary E. and to the descendants of her body.    This is the only provision made for the adopted daughter.    By the will he gave other specified property to his wife, and, after making a devise and bequest to the Palmyra presbytery, made a nephew and two nieces his residuary devisees.    The property devised consists largely of real estate.    The widow renounced the will and elected to take under the statute.

The petition states that Dr. Campbell for and in behalf of his infant daughter, now Mrs. Davis, and John McCormick entered into a contract whereby it was agreed that in consideration that Campbell would surrender his daughter to McCormick, he, McCormick, would adopt her as his child, and "would make her his heir at law, and would grant and devise to her all his property, both real and personal, of which he should die seized and possessed."    As bearing upon this alleged agreement Dr. Campbell testified:    "About three weeks after my wife died, Mr. McCormick asked me to step into his store.    He said, 'Are you willing to comply with the agreement made by my wife and yours in relation to giving up the baby to my wife to adopt, raise and educate.'    I did not hear what had been said by Mrs. McCormick and my wife, I said to him, 'Whatever Mrs. McCormick says is true; if you are tired of keeping the child, I will take her home as soon as I make arrangements for the board of the children.'    I said something about paying him for services, and he said, 'Don't mention that, for my wife wants to adopt the child and change

her name and name her for herself; I will have to go to the legislature to have the name changed.' I said, 'I must know what you are going to do,' and he said, 'I intend to make your little daughter my heir.' "

The witness goes on to say that after some reflection he agreed to the proposition, that they asked Mr. Pogue, who was present, to reduce to writing what had passed between them, which he did, and that Mr. Pogue was to hold the agreement until called for by one of the parties; says he never asked for it, though written twenty-one years ago. Mr. Pogue, whose daughter is one of the residuary legatees, testified that he never saw the contract and knew nothing about it, except from hearsay. A Mr. Keith testified that he was in Mr. McCormick's store when the latter received a copy of the act of the legislature, that Mr. McCormick produced from his desks what he said was a copy of the act and also a copy of the contract between him and Dr. Campbell. Witness did not hear the contract read and knows nothing about its contents.

The act of the legislature was approved on February 9, 1863; it was passed at the instance and request of Mr. McCormick, and is as follows: " Section 1. That an infant child, name Anna McClellan Campbell, daughter of Jerome B. Campbell, of Pike county, be declared to be adopted as the daughter of John McCormick and Mary E., his wife, of said county; and that the name of said Anna McClellan Campbell be, and the same is hereby, changed to Mary Elizabeth McCormick, and she is declared to be capable of inheriting from said John McCormick and Mary E., his wife, by will, devise or descent, in the same manner and with the same rights as though she was their child."

There is other evidence to the effect that the plaintiff grew up without any acquaintance with her brothers and sisters; that she was reared, treated and spoken of by her adoptive parents as a natural child; that Mr.

McCormick was fond and proud of her, and on various occasions made remarks to the effect that she was to share in his property when he died; that she would get all of his property, or inherit all of his property; that she was his sole heir, and would be worth ten thousand dollars. A sister of the plaintiff testified that Mr. McCormick said, when he adopted the child, "I will, and intend to, make your sister my legal heir." The defendants offered no evidence, whatever, and rested the case on that offered by the plaintiffs.

It is conceded, on the part of the plaintiffs, that the alleged contract cannot affect the rights of the widow of John McCormick; so, that, as between the plaintiff and the widow, there is, in reality, no contest whatever. On the other hand, the other defendants do not dispute the right of the plaintiffs to have a contract, like that set up in the petition, enforced; but they do insist that the evidence fails to establish the contract alleged.

It is not, and cannot be, maintained that the act of the legislature discloses any contract, on the part of McCormick, to give to the adopted daughter his property at his death. The alleged agreement must, therefore, be proved by other evidence, though the act is a circumstance in the case. As the evidence stands, we think it clearly established that there was some agreement between Dr. Campbell and Mr. McCormick, and that the agreement was reduced to writing, though it could not be found for use on the trial of this cause. The question then is, what were the terms of the contract? It is fair to believe the legislature would not have passed the special act without the consent of Dr. Campbell; and a very natural inference from all the evidence is, that the agreement was but a consent, on his part, to the passage of the act to be placed before the legislature. But Dr. Campbell and his daughter, then about twenty-two years of age, testify that McCormick said he would make the child his heir. This is the

most favorable statement of the contract, for the plaintiffs, to be found in the evidence. It is true there is evidence tending to show subsequent declarations of Mr. McCormick that his daughter would get all of his property. Such may have been his intention when these statements were made, but they cannot be allowed to expand the contract, as testified to by Dr. Campbell, who was a party to it, and was then, and is now, interested in the plaintiffs' behalf. The strongest case made by the evidence for the plaintiffs is, that McCormick agreed to adopt the child and make her his heir. Such an agreement falls far short of the one alleged, namely, that he agreed to grant and devise to her all of his property at his death. The proved agreement only places the adopted child in the position of a natural child. Its effect is no greater than a deed of adoption under the statute; and, had the adoption been made pursuant to the statute, Mr. McCormick could have still disposed of his property by will as he saw fit.

We are cited to the cases of *Sutton v. Hayden*, 62 Mo. 101, and *Sharkey v. McDermott*, 91 Mo. 647. In the first the contract was that Mrs. Sutton should have all of the property of Mrs. Green at the death of the latter. In the other the demurrer admitted that James and Catherine McLaughlin took the child, then four years old, and agreed to "provide and care for her, and adopt her as their child, and leave her their property at their death." The principles of law, asserted in those cases, are not questioned; but the cases made, on the proof in one and on the demurrer in the other, are unlike the one in hand. Here the proof fails to show any agreement, on the part of McCormick, to give his property to the adopted daughter. Her position, in respect of his property, is not unlike that of a natural child, and he could dispose of it as he saw fit by will.

There is much in the record to arouse the sympathy of the court in favor of the plaintiffs, and still more in

the evidence said to have been excluded and not preserved in the record before us; but courts sit to enforce, and not to make, contracts. The judgment, which was for defendants, is affirmed. All concur; BARCLAY, J., in the result.