LOUISE WEBER CRAWFORD v. HENRY ARENDS, MILDRED ARENDS HED-RICK, H. BARTH ARENDS, ALMA SMITH, MARIE SMITH LAWRENCE, and IRENE SMITH LEMARR, Appellants.—No. 37998.—176 S. W. (2d) 1.

Court en Banc, November 6, 1943.

Opinion on Motion to Modify filed, November 6, 1943.

*Paul H. Jenree* and *McVey & Clagett* for appellants.

*James G. Kimbrell* and *John C. Grover* for respondent.

ELLISON, J.—The plaintiff-respondent in this quiet title suit was adjudged by the circuit court of Jackson county to be the owner in fee simple of an undivided 5/196 interest in the real estate hereinafter described. She and the defendants-appellants all claim ownership through the will of Emma Arends Weber, deceased, a resident of Kansas. The interest in dispute is that devised by said will to Frank J. Weber, one of the testatrix' cousins, who predeceased her leaving no natural issue. Respondent claims that interest as the adopted child of Weber under Sec. 528, R. S. 1939, Mo. R. S. A., sec. 528, which provides that, "when any estate shall be devised to any . . . relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate . . . as such devisee would have done in case he had survived the testator." Respondent contends she became a "lineal descendant" of Weber by virtue of the statutes of adoption in force in this state at the time of her adoption.

The provisions of the will and deed of adoption as pleaded in appellants' answer were admitted in respondent's reply to be correct.

The dates and sequence of events also are conceded. Each side filed a motion for judgment on the pleadings, thereby raising only questions of law. The trial court overruled appellants' motion and sustained respondent's, entering judgment accordingly. From the outset these events and their dates are to be remembered. Respondent was adopted in Missouri by deed dated March 1, 1916. At that time the statutes governing such adoptions were in Chap. 20, Art. 1, R. S. 1909, and included Sections 1671, 1673 and 1675 of that revision. The will was executed about 17 years later on April 18, 1933. Frank Weber, the adoptive parent died only two months thereafter on June 16, 1933. The testatrix died and her will became effective [3] nearly eight years after that on February 2, 1941. Chapter 20, R. S. 1909, including Sec's 1671, 1673 and 1675, supra, were repealed and new statutes enacted in lieu thereof, by Laws Mo. 1917, p. 194. But the parties agree that these statutes as changed operated prospectively, only, and do not fix respondent's status.

Respondent's brief reminds us that the testatrix died a resident of Kansas, and suggests she may have drawn her will with the law of that state in mind—which they say recognizes an adopted child as a lineal descendant. But they further concede this bears only on the testatrix' *intention*; and that the Kansas law is not controlling. Neither was it pleaded. The case is briefed on the Missouri statutes, and those in force at the time of respondent's adoption, in 1916, must govern.

Another preliminary question must be settled before going further into the facts and law. When deciding the case the trial court made only a general finding of facts. Respondent therefore says we must sustain the judgment below if it can be done on any reasonable theory of law and fact, which is true. The quiet title suit was brought under the broad "hear and determine" statute, Sec. 1684, R. S. 1939, Mo. R. S. A., sec. 1684. Respondent further says in view of that fact the only issue is which of the adversary litigants has the "best title" as between themselves, citing Barr v. Stone (Mo. Div. 2), 242 S. W. 661, 664(6) and Barnett v. Hastain (Mo. Div. 2), 256 S. W. 750, 752(2). Appellants reply that since respondent by her answer claims title to the disputed interest and seeks affirmative relief by a judgment so declaring, the litigants on both sides stand in the same position, and neither can win without proving ownership of *some* title. We think this is correct. Cullen v. Johnson, 325 Mo. 253, 271, 29 S. W. (2d) 39, 46(7); Brown v. Weare, 348 Mo. 135, 145(9), 152 S. W. (2d) 649, 655(17), 136 A. L. R. 286.

Now, getting to the pleaded facts. The deed of adoption, duly acknowledged and recorded, was executed by The Children's Home Society of Missouri, a non-sectarian benevolent association duly chartered under the law of Missouri, to Frank J. Weber and his wife. It recited that the Probate Court of Jackson County by lawful instrument of writing surrendered and delivered the respondent to the

Society on April 14, 1915, she being a female child named Mary Jackson, and born in said county "on, or about the second of February, A. D. 1915." It then preliminarily recited that the child had been placed by the Society in the home of the Webers in said county, where she had remained for 90 days; that the Webers had become attached to her and desired to adopt her "as their own child," and to give her such treatment, and Christian Education as they would have if she had been born to them in lawful wedlock, and change her name to Louise Roland Weber. Then the declaring part of the deed recited that by and with the consent of the Society the Webers did thereby adopt respondent as their own child, conferring on her "all the rights, privileges and responsibilities which would pertain to her if she had been born to them in lawful wedlock, and change her name to Louise Roland Weber."

At the date of the execution of the deed, Sec. 1675, R. S. 1909, specifically governing such institutional adoptions, provided (italics ours) :

"Whenever any minor child below the age of seven years, intrusted by its parents or either of them to the care and custody of any legally incorporated institution in this state for the care and custody of minor children, or to any individual who may conduct such an institution, *shall have been abandoned* by such parents for *a period of two years*, or whenever such institution shall have received therein for care and custody, a minor child of the age aforesaid, which *thereafter* shall have been abandoned by its parents *for a period of two years*, such institution may, by its principal officer, and by and with the approval of the probate court of the county or city in which such institution is located, execute a deed of adoption with all the force and effect of a parent, to any proper person or persons in this state who shall desire to adopt such child, and who shall join in the execution of such deed for that purpose; and such deed shall be executed, acknowledged, and recorded in the county or city wherein such institution is located, and from and after the time of filing the same with the recorder, the child or children adopted as aforesaid, *shall have and be entitled to all the rights of lawful children against their adopted parent or parents,* and such adopted parent or parents shall have and be entitled to all the rights [4] of lawful parents against such adopted child or children, to the exclusion of any rights of its lawful parents."

Appellants say in their brief respondent's contention in the trial court was that her rights as an adopted child were based on the foregoing statute, Sec. 1675. Then they argue the statute forbids the execution of such a deed of adoption unless the child was abandoned by its parents for a period of two years either before or after it was intrusted to the institution. And as against that they show those requirements were not and could not have been met in this case, because the deed of adoption recites the respondent was born on or

about February 2, 1915; that the probate court intrusted her to the Home Society on April 14, 1915, only about two and a half months later; and the deed of adoption was executed on March 1, 1916, about thirteen months after her birth. From this appellants assert respondent could not have been abandoned by her parents for two years before the execution of the deed; and that her adoption, instead of being under Sec. 1675, was an ordinary adoption provided for in Sec. 1671, R. S. 1909, supra.

Respondent's brief replies that appellants pleaded in their answer she was adopted under Sec. 1675, and they are now estopped to dispute it. We cannot see that they did. Appellants' answer did state that Frank Weber adopted respondent by deed of adoption, pursuant to the "then law" but they did not commit themselves to the contention that the adoption was based on that specific section. Neither did they plead the adoption was legal. It would do violence to the whole record to say that appellants by their answer and trial theory conceded respondent was legally adopted—although their main position below probably was, as it is here, that even if she were legally adopted, it did not make her a *lineal descendant* of Frank Weber, so that she would take the share of her deceased adopted parent under the will of Emma Arends Weber by virtue of Sec. 528, supra.

But aside from the alleged estoppel, respondent in her brief argues affirmatively that the adoption *was* under Sec. 1675. She calls attention to the fact that the deed of adoption said only she was born "on or about February 2, 1915;" and contends this generalization was sufficiently broad to support a finding by the trial court that she had been abandoned by her parents for two years before the execution of the *deed* of adoption. But does this satisfy the statute? Does the first adverbial clause mean (as appellants construe it) that the child must have been abandoned by its parents for two years *before* it is *committed* to the institution? The second adverbial clause clearly contemplates a two year abandonment *after* the institution received the child. If that is what the two clauses do mean, then the two year period cannot combine time both before *and* after the child is committed, as respondent seems to think. But we will not go into that question, because even on respondent's theory there could not have been an over-all two year period before the deed was executed, since the child could not have been abandoned before she was born; and her birth on February 2, 1915 occurred only thirteen months before the execution of the deed on March 1, 1916.

A finding that the respondent was born two years before the deed was executed, would require the setting of that date *eleven months* before the pleaded date of February 2, 1916. The expression "on or about" in the deed preceding the pleaded date of birth cannot be given an interpretation that elastic. If one were to say a supposed centenarian was born on or about the year 1843, perhaps some latitude would be allowable as to the exact year. Or if one were to say an

event several years before happened in or about the month of July, there again there might be a permissible variance of a month or two either way from the specified month. But when it is said the recent birth of a child was on or about a specified day, it is going entirely too far to construe that statement as covering a date eleven months earlier. The words "on or about" do not put the time at large, but indicate that it is stated with approximate certainty. The phrase is used "in reciting the date of an occurrence . . . to escape the necessity of being bound by the statement of an exact date . . . , and means approximately, about, without substantial variance from, near." 29 Words & Phrases (Perm. Ed.) "On or About" p. 455.

So we conclude, as do appellants, that respondent's adoption must be based on the *general* statute in force at the time, Sec. 1671, R. S. 1909; and we therefore shall not stop to inquire what respondent's rights would have been if she had been adopted [5] under Sec. 1675. However, in passing, we observe that Sec. 1675 merely says the adopted child (italics ours) "shall have and be entitled to all the rights of lawful children *against their adopted parent or parents,*" and the latter corresponding rights against it, to the exclusion of the natural parents. But it does not say "for every purpose," as does the 1917 law, now Sec. 9614, R. S. 1939, Mo. R. S. A., sec. 9614. The general Section 1671 is as follows (italics ours):

"If any person in this state shall desire to adopt any child or children as his or her *heir,* it shall be lawful for such person to do the same by deed, which deed shall be executed and acknowledged by the person adopting such child or children and recorded in the county of the residence of the person executing the same, as in the case of conveyance of real estate."

And Section 1673 declares the rights of such adopted children. It says (italics ours):

"From the time of filing the deed with the recorder, the child or children adopted shall have the same right against the person or persons executing the same, *for support and maintenance and for proper and humane treatment,* as a child has, by law, against lawful parents; and such adopted child shall have, in all respects, and enjoy all *such* rights and privileges as against the persons executing the deed of adoption. This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption."

Section 1671 was always construed to mean the adopted child would inherit as an heir of the adopting parent the same as if born in lawful wedlock. Moran v. Stewart, 122 Mo. 295, 299, 26 S. W. 962, 963; id., 173 Mo. 207, 217, 73 S. W. 177, 180. But it was uniformly held that the rights of the adopted child as an heir were limited to the estate of that parent or parents, and did not make the child an heir by representation to the property of collateral kin of the adopting parent, which the latter would have inherited if he had survived such kinsman. Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 118 Am. St. Rep. 672, 8

L. R. A. (N. S.) 117, 9 Ann. Cas. 775. Neither would the adoptive parent be the heir of the adopted child, but the estate of the latter would pass to its blood heirs, Reinders v. Koppelmann, 68 Mo. 482, 496, 30 Am. Rep. 802. Similarly it was held in Clarkson v. Hatton, 143 Mo. 47, 55, 44 S. W. 761, 762, that an adopted child would inherit from both its adoptive parents and its natural parents, but would not come within the designation "bodily heirs" of the adopting parent.

In a second appeal in the Reinders-Koppelmann case, 94 Mo. 338, 344, 7 S. W. 288, 290, it appeared that the testator had devised one-half the remainder in his land to his "nearest and lawful heirs" and those of his wife. The case hinged on the construction of those words in the will, and not on the intestate laws, but the opinion ruled they did not include an adopted child of the testator and another of his wife, holding they were heirs not by the *law*, but by the contractual deed of adoption. A similar case is Brock v. Dorman, 339 Mo. 611, 613, 98 S. W. (2d) 672, 674, where the testator left a life estate in land to his son, remainder to the latter's heirs. The opinion took cognizance of the foregoing decisions, but held the question was one of testamentary construction, not intestacy, and ruled the adopted son came within the class contemplated by the testator as "heirs" of the life tenant. Still a third case, St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 24, 76 S. W. (2d) 685, 688, construed a will which left a life estate in equal shares to all the testator's children, remainder to their heirs at law. One of the children had two adopted sons. The opinion held they were "heirs" of that child within the meaning of the will. That adoption was under the 1917 law, now Sec. 9614, R. S. 1939, Mo. R. S. A., sec. 9614. The opinion notes the radical difference between that statute and the prior law, observing that under the latter the relation of parent and child was confined to the parties to the deed of adoption excluding all collateral kin, whereas the present statute makes it become the child of the adoptive parents *for every purpose*. In this connection the opinion said the Legislature had the right thus to "change the blood stream," though an adopted child would still not be "an heir of the body." All these changes were presumed to have been known to the testator when he made his will.

In Leeper v. Leeper, 347 Mo. 442, 448(2), 147 S. W. (2d) 660, 662(2), a father while Sec's 1671 and 1673, R. S. 1909, supra, were in force, deeded land to his son L for life, remainder "to his heirs, but should he die without children then to his full brothers and their heirs." Later, after the adoption of the 1917 law, the grantee L adopted a son. Held, after [6] reviewing nearly all the cases cited here, that the grantor did not intend to include L's adopted child as a remainderman.

In a comparatively recent case, McIntyre v. Hardesty, 347 Mo. 805, 149 S. W. (2d) 334, the plaintiff sought to be decreed the adopted son of M, and in consequence the great-grandson and heir of C, who was

M's grandmother. The right to be classified as an heir of the great-grandmother was denied, both below and in this court. The decision followed and paid tribute to the Hockaday-Lynn case, supra, saying that while the plaintiff might take as an heir of his adoptive parent, who predeceased the grandmother, still he could not occupy a similar status with reference to the ancestors and collateral kin of that parent. This conclusion was put on the basic thesis that "property follows blood," as was held in the Hockaday and Hill cases. Indeed, this McIntyre case went further, and held the plaintiff could not inherit from the grandmother even under the 1917 law, now Sec. 9614, supra, notwithstanding the "radical changes" in that law.

The latest case cited on this point is Weber v. Griffiths, 349 Mo. 145, 159 S. W. (2d) 670. The plaintiff there sued claiming to be a sister and collateral heir of G, because she (plaintiff) had been adopted prior to the 1917 law by the natural parents of G, and G had died intestate leaving no closer relatives. Recovery was denied on authority of the holding in the Hockaday, McIntyre and Hill cases that an adopted child can inherit only from the adopting parent and is not an heir of the adopter's kindred.

A few other decisions are referred to by the parties but we cannot take the time or space to discuss them. Respondent's theory seems to be that since all the decisions here reviewed hold an adopted child was the heir of the adopting parent even under the law before 1917, therefore he was the "lineal descendant" of that parent within the meaning of Sec. 528. We do not think so. This statute shows the same intention to recognize blood lines as did those former adoption statutes. Sec. 528 does not even apply to a testamentary devise unless the named devisee was a blood relative of the testator. The statute says if such a devisee predecease the testator his lineal descendants take that share. It is an unnatural construction to say this means the devise shall thereby be diverted to a stranger in blood to the testator because of an adoption made by the foster parent, in which the testator had no voice and about which he may have known nothing.

The only other point calling for discussion, and that briefly, is respondent's contention that the real property here involved was specifically exempted from the residuary clause of the will in consequence of which the appellants can have no title thereto as residuary legatees. This is wholly erroneous. Respondent evidently has in mind clause 10 of the will, which deals with another piece of real estate in Kansas. The residuary clause of the will is clause 9. It leaves the residuary estate one-third to appellant Henry Arends; one-third to the testator's brother William Arends for life, the remainder in that interest to pass two-thirds to the appellant Mildred Arends Hedrick and one-third to the appellant H. Barth Arends. The remaining one-third under the residuary clause was to go to the testator's sister Clara Arends Smith, who predeceased the testator as alleged in the petition, leaving as her issue the appellants Alma

Smith, Marie Smith Lawrence and Irene Smith LeMarr.

For the reasons stated the judgment of the circuit court is reversed and the cause remanded for further proceedings to ascertain and declare the respective fractional interests of the appllants under this opinion to the real estate in suit, which is described as follows: Lots 11 and 12, in Block 54, in East Kansas, an addition to the City of Kansas, now Kansas City, Missouri; also, the south 31-½ feet of Lot 15 and all of Lot 24, in Swope's Addition to the City of Kansas, now Kansas City, Missouri.

Judgment reversed and cause remanded.

PER CURIAM:—The foregoing opinion by ELLISON, J., in Division Two, is adopted as the opinion of the Court en Banc. All concur except Gantt, J., absent.

PER CURIAM on Motion to Modify or Clarify Opinion.—The judgment below declared the plaintiff-respondent Crawford to be the owner of an undivided interest in land as the lineal descendant of Frank J. Weber, deceased, within the meaning of Sec. 528, R. S. 1939, Mo., R. S. A., sec. 528. The land had been devised to him by the will of his first cousin, Emma Arends Weber, but he predeceased the textatrix. In these circumstances under that statute the devise would go to his "lineal descendants." But he left no natural or blood heirs; respondent was [7] merely his adopted child. The question in the case was whether, as such, she was a "lineal descendant" of Weber within the meaning of the statute. We held not, in view of the fact that she had been adopted on March 16, 1916, when Sec's 1671, 1673, R. S. 1909 were in force, taking the view that these two sections and Sec. 528, considered together did not give her the rights of a blood heir of Frank Weber as against the testatrix.

But within a year after respondent's adoption in 1916 the 1909 statutes were repealed and new ones enacted in lieu thereof, by Laws Mo., 1917, p. 194. Particularly one, which is now Sec. 9614, R. S. 1939, Mo., R. S. A., sec. 9614, contains broader provisions than the former law, saying the adopted child "shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock;" and shall be "capable of inheriting from, and as the child of said parents as fully as though born to them in lawful wedlock."

As already stated, it was conceded by the parties at the trial below (and correctly so) that this Sec. 9614 did not govern respondent's rights because she had been adopted before it was enacted; and the principal opinion rules the case on that theory, applying the 1909 law. The opinion was delivered on July 20, 1943. Five days before that, on July 15, a new statute was enacted by the General Assembly (Laws Mo. 1943, p. 353) to be known as Sec, 9616a, reading as follows:

"Any person adopted by deed of adoption or agreement of adoption in writing prior to 1917 and wherein said instrument was filed for record prior to July 1, 1917, shall hereafter be deemed and held to be for every purpose the child of its parent or parents by adoption as fully as though born to them in lawful wedlock, and such adoption shall have the same force and effect as an adoption under the provisions of this chapter, including all inheritance rights."

Respondent comes within the terms of this Act since she was adopted by written deed of adoption prior to 1917, and the deed was filed for record prior to July 1, 1917. The cause was transferred to the court en banc from Division 2 where the opinion was written, for the sole purpose of permitting respondent's counsel to file a motion to modify or clarify the opinion with respect to the new Act. It will be noticed the section says the adopted person "shall *hereafter* be deemed and held," etc. The word "hereafter" as thus used refers to the date when the Act takes effect. 19 Words & Phrases (Perm. Ed.), p. 389. It is obvious that the construction of this statute and the respondent's rights under it were not and could not have been a matter for adjudication in the trial court; and since this record is here by appeal we are confined to the issues in that court. We cannot treat the cause as an original proceeding and determine the meaning and effect of the statute.

The motion to modify or clarify is therefore overruled. All concur except *Gantt, J.*, absent.